The undersigned have reviewed the prior Opinion and Award, the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, to receive further evidence or to amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the finding of fact found by the Deputy Commissioner (with modifications to reflect the fact that the findings were applicable as of the original decision) as follows:
FINDINGS OF FACT
1. At the time of hearing plaintiff was an approximate 5'6", 230 pound 48 year-old female who suffered from diabetes mellitus and hypertension, but was able to continue regularly working up until the date in question despite those conditions.
2. Although she only completed the eighth grade; plaintiff is able to read and write and has attempted to obtain her GED or so-called high school equivalency certificate through a local Community College. Her prior work history has included working for U.S. Industries as a sewing machine operator and presser, for the Newport News Shipyard as a rigger, forklift operator and crane operator, for International Paper Company in shipping and receiving, as a forklift driver and doing janitorial work, for Jacobs Construction Company as a forklift operator as well as for another construction company and sewing factory performing the type of physical labor she can no longer engage because of the permanent back injury giving rise hereto.
3. In April of 1990 plaintiff became employed by defendant Kerr Group, Inc., as a palletizer responsible for removing boxes of glass weighing in the 23 to 40 pound range from one of the premises computerized conveyor lines, stacking these same boxes up to five high on pallets and moving the pallets by forklift and was assigned to work on the second shift, which began at 7:00 p.m. one evening and ended 12 hours later the next calendar day the following morning.
4. At the beginning of the second shift on Sunday, November 3, 1991 plaintiff reported to work and between 6:00 and 6:15 a.m. the following Monday morning (November 4, 1991) near to the end of the shift was involved in removing boxes of glass from the premises conveyor and stacking them on a pallet as part of her duly assigned ordinary employment duties as a palletizer.
5. In the process of twisting to place one of the same boxes atop a five high tier thereof on a pallet plaintiff experienced a popping sensation in her lower back, accompanied by back pain and thereby a specific traumatic incident resulting in the disabling, and otherwise compensable, back injury giving rise hereto.
6. Initially plaintiff did not believe her injury was serious and was able to complete the workday. She was scheduled to be off on Monday (November 4, 1991); however, when plaintiff attempted to get out of bed on Tuesday she was unable to because of her pain and as a result sought medical treatment from her family physicians at Ahoskie Family Practice. On the same day she was seen by Dr. Taylor there with a history of having strained her back at a specific time at work lifting glass. Dr. Taylor ordered a conservative course of treatment including medication and restricted activity, and gave plaintiff a note excusing her from work through November 11, 1991. Plaintiff subsequently took Dr. Taylor's work excuse to defendant-employer and advised that she was out of work because of a back injury sustained at work.
7. Upon becoming aware that she was claiming a work-related back injury defendant-employer referred plaintiff for evaluation to its so-called company physician, Dr. Timothy Frei, a Board Certified Ahoskie Internist, according to the same employer's practice of referring employees to Dr. Frei for workers' compensation claims or if there was a question about whether a job related injury was involved.
8. Thereafter on November 12, 1991 plaintiff was seen by Dr. Frei with a history of hurrying to get her work done toward the end of the work shift on Monday morning, November 4, 1991 and straining her back during the course of her work, which required her to lift boxes weighing approximately 28 pounds.
9. In the interim, the day before (November 11, 1991) plaintiff had returned to her family physicians at Ahoskie Family Practice and not only received a continued course of conservative treatment, but a note restricting her to light duty work lifting no more than five to ten pounds for two weeks before returning unrestricted work.
10. When he saw her on November 12, 1991 Dr. Frei similarly placed plaintiff on light duty work and discussed the situation with the premises personnel manager, Mr. Sewell (see his stipulated office note); however, defendant-employer did not have suitable light work available and as a result plaintiff remained out of work as a result of her injury from November 5, 1991 to December 2, 1991.
11. Although she remained unable to return to her regular palletizer's job; by December 2, 1991 plaintiff had sufficiently recovered from her injury so as to attempt to return to alternate lighter type work and defendant-employer provided her a job as a material handler, which required substantially less lifting and primarily involved operating a forklift requiring her to deliver closures keeping the premises 25 to 28 glass making machines operating, but did require work at a much faster pace.
12. Because of her November 4, 1990 back injury, however, plaintiff was physically unable to continue the material handler's job and on or about January 13, 1992 defendant-employer laid her off, at which time she began drawing unemployment security compensation benefits resulting in defendant-employer being entitled to deduct those same benefits from the instant award of continuing disability benefits pursuant to the provisions of G.S. § 97-42.1 and the undersigned assume that the parties can obtain the amount and period of benefits received from the Employment Security Commission and agree to the appropriate deduction without further Industrial Commission award.
13. During the period that plaintiff was initially totally incapacitated following her injury from November 5, 1991 to December 2, 1991 when she attempted to return to alternate lighter work she received $100.00 a week in benefits under the non-contributory short-term group disability plan defendant-employer provided for its employee's, which was not due and payable under the Workers' Compensation Act by virtue of the same employer's denial of the involved workers' compensation claim entitling it to a credit pursuant to the provisions of G.S. § 97-42
for those short-term disability benefits received against the instant award of continuing total disability.
14. As aforesaid, on November 5, 1991 plaintiff not only orally advised defendant-employer of her injury when she delivered the work excuse from Dr. Taylor and as a result thereof defendant-employer referred her for evaluation to its company physician, Dr. Frei, who she similarly advised of injuring her back straining at work on November 4, 1991; but at the time of initially filing her claim for short-term disability benefits plaintiff indicated her back injury arose out of her straining to do her job at work.
15. As plaintiff orally advised defendant-employer of her back injury the next day and as a result thereof it sent her to the premises company physician for the evaluation that was scheduled a week later, she has offered a reasonable excuse to the satisfaction of the Industrial Commission for her delay in providing formal written notice of the same injury until filing her Form 18 claim in June of the following year.
In view of the fact that plaintiff sought prompt, competent and continuing medical treatment for the involved back injury on the following day and contemporaneously advised defendant-employer of the same injury allowing it the opportunity to have her evaluated by its company physician a week later; defendant-employer was not, by the manner of notice of injury received, prejudiced in its ability to provide plaintiff with prompt, competent and continuing medical treatment or to timely investigate the circumstances of her back injury within a reasonable time following its occurrence.
16. Because she continued to experience incapacitating pain after she was laid off by defendant-employer plaintiff sought further medical treatment from Dr. Lawrence Morales, a Chesapeake, Virginia orthopedic surgeon, who performed a number of diagnostic studies, including an MRI, EMG and a thermogram, and provided a conservative course of treatment before referring her to a neurologist, Dr. Raymond Iglecia, who operates a pain management clinic.
17. As of the date of the original decision, plaintiff remained under the care of Dr. Iglecia for the chronic incapacitating pain she suffers from her November 4, 1991 back injury and as a result thereof had developed clinical depression similarly requiring medical treatment.
18. As of the date of the original decision plaintiff had not yet reached maximum medical improvement and/or the end of the healing period from and following her November 4, 1991 injury; but rather, remained in need of the type of chronic pain program recommended by Dr. Iglecia, followed by rehabilitation and work-hardening to enable her to deal with her chronic incapacitating pain so as to be able to return to work; however, because of her lack of transportation and finances she had been unable to obtain the same needed treatment.
Although her physical condition had not substantially changed with the intermittent conservative treatment she had been able to afford; her clinical depression had improved enabling her to better cope with her incapacitating pain. Because of her resulting inability to work, plaintiff did not have the money to treat her concurrent, but unrelated, diabetes mellitus and hypertension and as a result her general health had worsened.
19. Although she was capable of light work within the physical limitations described of record when the original decision was filed; plaintiff remained unable to return to her regular palletizer's job for defendant-employer and defendant-employer had not offered to provide her the type of suitable light work she required since laying her off in January of 1992 when she was no longer able to continue the material handler's job because of her incapacitating back injury.
20. With the exception of the thermogram ordered by Dr. Morales, the various diagnostic testing as well as the course of treatment provided by Drs. Morales and Iglecia was reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's incapacitating November 4, 1991 back injury; therefore, defendant-employer is obligated to provide the same treatment as well as the chronic pain program she still requires for her incapacitating back injury.
The thermogram ordered by Dr. Morales, however, is no longer scientifically reliable in evaluating the type of injury plaintiff suffered on November 4, 1991 and as a result defendants are not obligated to bear the cost of the same.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On November 4, 1991 plaintiff sustained an injury by accident arising out of and in the course of her employment resulting in the back injury for which compensation is claimed. G.S. § 97-2(6).
2. As a result of the injury by accident giving rise hereto plaintiff was totally disabled from November 5, 1991 to December 2, 1991 entitling her to compensation at a rate of $170.62 per week during this same period and has remained totally disabled since January 13, 1992 when defendant-employer laid her off entitling her to compensation at the same rate so long as she remains totally disabled, subject to defendant-employer being entitled to a credit pursuant to the provisions of G.S. § 97-42 for the $100.00 per week in short-term group disability benefits paid between November 5, 1991 and December 2, 1991 under the non-contributory short term disability plan the same employer provided for its employee's, which were not due and payable under the Workers' Compensation Act by virtue of defendant-employer's denial of the involved claim and a deduction for the unemployment benefits that plaintiff received after being laid off from defendant-employer in January of 1992 pursuant to the provisions of G.S. § 97-42.1, the dates and periods of which the undersigned assume the parties can obtain from the Employment Security Commission and agree to the appropriate deduction without further award of the Commission.
3. Although she had neither reached maximum medical improvement nor was able to return to her regular palletizer's job as of the date of the original Opinion and Award; plaintiff remained able to perform light duty work within the physical limitations described of record. However, since laying plaintiff off from work on January 13, 1991 when she was no longer able to perform the alternate material handler's job defendant-employer had not offered to provide her suitable work. G.S. § 97-22.
4. For the reasons stated in the above Findings of Fact plaintiff has complied with the notice of provisions of G.S. § 97-32.
5. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of her November 4, 1991 injury by accident giving rise hereto, including as part thereof the various diagnostic tests and treatment that has since been provided by Drs. Morales and Iglecia, except for the disputed thermogram, as well as the chronic pain program recommended by Dr. Iglecia. As the thermogram ordered by Dr. Morales is no longer scientifically reliable for diagnosing the type of back condition plaintiff suffers defendant-employer is not obligated to bear the cost thereof. G.S. § 97-25 (before amendment).
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $170.62 per week during the period from November 5, 1991 to December 2, 1991 and from January 13, 1992 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains disabled, subject to defendant-employer being entitled to a credit for the $100.00 per week in short-term disability benefits it paid under its non-contributory short-term group disability plan during the period from November 5, 1991 to December 2, 1991 as well as a deduction for the unemployment compensation benefits plaintiff received after being laid off from defendants employ on January 13, 1992, the amount and period of which the undersigned assume the parties can obtain from the Employment Security Commission and stipulate as to the appropriate deduction without the necessity of a further Industrial Commission award. Such compensation as has accrued the same shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved and the above-reference credit and deduction to which defendant-employer is entitled.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the accrued net (after credit for the short-term disability benefits and unemployment benefits deduction) compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the above award and forwarded directly thereto. For the balance of his fee defendants shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the November 4, 1991 back injury giving rise hereto, including as part thereof the various diagnostic tests and treatment performed by Drs. Morales and Iglecia, except for the disputed thermogram for which defendants are not responsible, as well as the chronic pain program recommended by Dr. Iglecia, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs.
IT IS FURTHERMORE ORDERED that plaintiff's motion for attorney's fee to be assessed against defendants pursuant to G.S. § 97-88.1 is DENIED in that this matter was not defended without reasonable ground based on stubborn unfounded litigiousness.
 S/ ________________________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ J. RANDOLPH WARD COMMISSIONER
MSC:dtc